## Bayless v. Hughes' Executors, et al.

(Decided December 15, 1925.)

### Appeal from Fayette Circuit Court.

1.  Wills—Verdict Against Mental Incapacity and Undue Influence Not Palpably Against Evidence.—In contest of will of unmarried man, 83 years old, verdict against contention of mental incapacity and undue influence by his colored servant, who nursed him during his last illness and who was the mother of his son, held not palpably against the evidence.

2.  Appeal and Error—Refusal to Allow Witness to Testify Not Reversible, in Absence of Showing of Probable Testimony.—Order refusing to allow witness to testify held not reversible error, in absence of showing as to what her testimony would have been.

3.  Evidence—Prior Statements of Physician who was Executor Properly Confined to Impeachment.—In contest of will, evidence of statements of deceased's doctor, who was executor under will, that deceased was incompetent to make will, which was not allowed as testimony in chief of contestants, held properly confined to impeachment of doctor who, on cross-examination, after testifying for will, denied making the statements.

FRANKLIN, TALBOT & CHAPMAN and JAMES A. DIXON for appellant.

HUNT, NORTHCUTT & BUSH, ALLEN, BOTTS & DUNCAN, WALLACE MUIR, JAMES G. DENNY, JOHN J. WINN, ROBERT H. TOMLINSON, WADE H. LAIL and CHARLTON B. THOMPSON for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

J. T. Hughes died a resident of Fayette county and after his death a paper was probated as his will in the county court. An appeal was taken to the circuit court. The case was there tried before a jury, who returned a verdict in favor of the will, and judgment was entered accordingly. From this judgment the appeal before us is prosecuted.

It is insisted for the appellant that the evidence shows mental incapacity and undue influence. A large amount of testimony was taken; briefly stated the facts are these:

John T. Hughes was eighty-three years old. He owned about 1,300 acres of valuable land near Lexington and about $30,000 in tangible personal property. He was unmarried and his only kindred were his cousins. He was a horseman and had conducted a very successful business for many years. He was a large, strong man and well preserved. In November, 1923, he threw a rock at a turkey gobbler in his yard, and losing his balance fell to the ground and broke his hip. He was taken to the hospital and died in the hospital the following August. He actively managed his large business, not only up to the time of his injury, but after he went to the hospital. He kept up with what was going on at his farms, keeping a record of his horses, buying what was needed anywhere and giving checks for his purchases and other expenses. Before he went to the hospital he had spoken to Mr. Joe Denny, a lawyer, to prepare his will. After he was in the hospital some days he made an effort to get hold of Mr. Denny in regard to the will, but Mr. Denny was sick. He then commenced writing himself a memorandum for his will, and when he had worked on this for some time he suggested to Dr. Carrick, who was his physician and had been for over thirty years, to get him a lawyer to write his will. At this suggestion Dr. Carrick brought there Mr. George Hunt, of Lexington. He gave Mr. Hunt the paper which he had written out, and Mr. Hunt from this drew the will, subject to such changes as he then indicated. After the will was drawn it was signed and witnessed by Mr. Hunt and the banker with whom he did business. This was on March 25, 1924. The memorandum which he had drawn was preserved by Mr. Hunt and is practically the same as the will. There was afterwards

found in his safe at home a will he had made in 1889, which in important particulars was similar to the will as drawn by Mr. Hunt. By his will he gave about twenty pecuniary legacies to different persons, aggregating about $30,000.00. He then devised to Alex. Rankin, his old faithful colored man, 96½ acres of land for life. He devised to Ellen Davis, ''my faithful servant, my home farm,'' containing about 270 acres of land, also the contents of the house, the farming utensils and the work stock on the place. He devised to Robert Henry Hughes, a son of Ellen Davis, a farm containing 160 acres in fee. The remainder of his estate he devised to the Midway Orphans' Home for the purposes set out in its charter. Ellen Davis was three years younger than he. She was the slave of his mother and he was the father of Robert Henry Hughes, her son, born when she was about eighteen years of age. The relation then existing between him and Ellen was broken off during the war when the negroes were set free, but was resumed after his mother's death about 1872 and continued from that time until his injury. Ellen came to the hospital and stayed there in the room with him a large part of the time, nursing him and looking after him.

The proof for the contestants was to the effect that after his injury he was affected with senile dementia; was very forgetful and was under the domination of Ellen. They also introduced proof showing that he was under the influence of liquor and dope a large part of the time and in no condition to do any business.

The proof for the contestees is to the effect that his mind was in no wise affected; that he continued to transact his large business after his injury just as he did before, and that he was not under the influence of whiskey or dope or any domination.

The weight of the evidence is in favor of the contestees, and while there was sufficient evidence to take the case to the jury, both on the question of mental capacity and undue influence, it cannot be said that the verdict is palpably against the evidence.

Appellant complains that Miss Sallie Bronson, one of the heirs at law, was not allowed to testify after other witnesses for contestants had been introduced. Miss Bronson had declined to join in the appeal when it was taken, but afterwards employed attorneys to prosecute the appeal and sat with her attorneys prosecuting it, although she was named as appellee in the statement.

When she was called as a witness after the trial had been going on several days the court's attention was called to the situation, an order was entered striking her out as appellee and making her an appellant, and she was not allowed to testify after other witnesses had been introduced. But no avowal was made as to what she would have stated if allowed to testify and we cannot say that the appellants were prejudiced by the court's refusing to allow her to testify, for her testimony, if given, may have been wholly unimportant.

By the will Dr. J. C. Carrick and Mr. Jacob H. Graves were made the executors. After the will was probated in the county court they qualified. On the trial in the circuit court, as a part of their testimony in chief, the contestants offered to prove by a witness that Dr. Carrick had told him at a certain time and place that Mr. Hughes had no mind and was not competent to make a will. They also offered to prove other like statements by Dr. Carrick, made about that time. The court refused to allow the testimony in chief, but when Dr. Carrick testified as a witness he was asked if he had made these statements and said that he had not. The witnesses were then called in rebuttal and testified that he had made these statements to them, but the court charged the jury that the testimony was only competent for the purpose of impeaching the testimony of Dr. Carrick and was not substantive testimony in the case. This is complained of. Dr. Carrick was not a devisee; he took nothing under the will. The rights of the devisees should not be affected by any statements that he made out of court. The court, therefore, properly refused to allow the evidence in chief and properly instructed the jury as to its effect when introduced in rebuttal.

A few other rulings of the court in the admission or rejection of evidence are complained of on the appeal, but they were unimportant, and on the whole record we are unable to see that the substantial rights of the parties were in any way prejudiced by any of the rulings of the court. The trial lasted many days. The rulings of the court were admirably clear, consistent and correct.

The only complaint of the instructions to the jury is as to the instruction on undue influence, but that instruction is taken bodily from the case of Watson's Exr. v. Watson, 137 Ky. 25, and has been since approved time and again by the court. It is the instruction usually

given in these cases and there was nothing in this case making it inappropriate here.

On the whole case there was no error to the prejudice of the substantial rights of appellant on the trial.

Judgment affirmed.